THE BERLIN IRON BRIDGE COMPANY v. JOSEPH E. WAGNER, AS SOLE COMMISSIONER OF HIGHWAYS OF THE TOWN OF OSWEGATCHIE.

*Town bridge — a town meeting specially called to consider its construction is a prerequisite to any action by the board of supervisors — vote to be by ballot — highway commissioner's authority.*

A board of supervisors has no jurisdiction, under subdivision 6 of section 1 of chapter 482 of the Laws of 1875, as amended by chapter 451 of the Laws of 1885, to pass a law authorizing a town to borrow money upon its bonds for the purpose of constructing a bridge, and to appoint commissioners to attend to the construction thereof, unless the town meeting, at which such resolution is passed requesting such action upon the part of the board of supervisors, shall be a

regular town meeting, or a special town meeting called for the particular purpose, and a special town meeting, called in pursuance of section 7 of article 1 of title 2 of chapter 11 of part 1 of the Revised Statutes, as amended by chapter 259 of the Laws of 1886, is not called for that particular purpose, and has no authority to act in the premises.

The vote upon such a question at the town meeting must, under chapter 122 of the Laws of 1883, be by ballot.

In the absence of valid action having been taken to place the erection of a town bridge in the hands of other agents, the sole highway commissioner of the town is authorized by law to proceed with its erection in reliance upon there being subsequently raised by tax the amount of an appropriation made therefor, and a contract entered into by him for that purpose is valid.

*Semble*, that if the board of supervisors had had authority to act, it would have been authorized to appoint commissioners to build the bridge.

SUBMISSION of a controversy under section 1279 of the Code of Civil Procedure.

The following, among other facts, were contained in a statement of facts upon which the said controversy depends:

I. The plaintiff is a manufacturing corporation, duly incorporated under the laws of the State of Connecticut, extensively engaged in the manufacture of iron bridges in said State of Connecticut, and the erection of the same in the different States of the United States and in foreign countries.

II. The defendant is, and for two years or more last past has been, sole commissioner of highways of the town of Oswegatchie, one of the towns of St. Lawrence county, in the State of New York.

III. There is in said town of Oswegatchie a public highway, commonly known as the Eel Weir road; and which said highway is, and has been for more than fifty years last past, one of the main public highways of said town of Oswegatchie, and duly recorded as such.

IV. That upon said highway, and forming a part of the same within said town, is a bridge crossing the Oswegatchie river, at the Eel Weir rapids, which bridge has for many years been in use as a part of said highway; and the said bridge is one of the highway bridges which said town is by law authorized to erect and maintain.

V. That before, and at the time and since, the special town meeting hereinafter referred to, the said bridge has been dangerous and unsafe for public travel, being old and worn out; and during said time the said bridge has been closed to public travel by said

highway commissioner on account of said dangerous condition, the said highway commissioner having condemned the same.

VI. That, on the 2d day of November, 1889, in pursuance of section 7, part 1, title 2, article 1, chapter 11 of part 1 of the Revised Statutes, as amended by chapter 259 of the Laws of 1886, a special town meeting was duly held in the town hall, in said town of Oswegatchie, in the city of Ogdensburg, at the time specified in the call for said meeting, to vote upon the question of raising and appropriating $10,000 to maintain the bridge across said Oswegatchie river at said Eel Weir rapids, in said town.

The following notice of said special town meeting was duly posted by the town clerk of said town as required by law, and said notice was the only notice given of said meeting:

### NOTICE.

*To the Electors of the Town of Oswegatchie. St. Lawrence County, N Y.:*

A petition, signed by more than twelve electors of the town of Oswegatchie, eligible to the office of supervisor of said town, requesting the town clerk of said town to call a special town meeting of the electors of the town for the purpose of raising and appropriating the necessary money to maintain the bridge across the Oswegatchie river at Eel Weir rapids, in said town, being one of the bridges that said town has to maintain:

Now, therefore, I, Nathaniel Wells, as town clerk of the town of Oswegatchie, by virtue of the statutes of the State of New York, in such cases made and provided, do hereby call a special town meeting of the electors of the town of Oswegatchie, aforesaid, for the purpose of raising and appropriating the necessary money to maintain the bridge across the Oswegatchie river at the Eel Weir rapids, in said town.

A resolution will be offered at said special town meeting to raise a sum, not exceeding the sum of $10,000, for that purpose. Said special town meeting will be held in the town hall, in the city of Ogdensburgh, on Saturday, November 2, 1889. The polls will be open at one o'clock P. M., and close at four o'clock P. M., of that day.

Dated *October* 25. 1889.

NATHANIEL WELLS,

*Town Clerk of the Town of Oswegatchie.*

VII. That, at said special town meeting, the electors of said town duly voted by printed ballots to raise and appropriate $10,000 to maintain the bridge across the Oswegatchie river at the Eel Weir rapids, in said town, the whole number of ballots cast being 155, of which 152 were for appropriating and raising $10,000 for purpose aforesaid, and three ballots were against the same.

VIII. At about the time of the opening of said town meeting, at about one o'clock P. M. on said day, a resolution in writing was offered, of which the following is a copy, except that said resolution contained the names of only three commissioners, some of which said three were different from any of the names mentioned in said following copy of resolutions. Following is said copy:

*Resolved*, That we hereby request the supervisor of the town of Oswegatchie, and the several ward supervisors of the city of Ogdensburg, to secure the passage of an act at the next session of the board of supervisors of St. Lawrence county, authorizing the town to borrow money to build a new bridge across the Oswegatchie river, at the Eel Weir rapids, on the site of the present bridge, and appointing William J. Averell, Daniel Magone, of Ogdensburg, Fenton Devoy, Henry Lovejoy and Alexander Mayne, of Oswegatchie, commissioners to construct such bridge in such form and manner as they shall deem for the best interests of the town; and that the order of such commissioners on the supervisor of the town shall be his warrant for disbursements to be made from time to time as may be necessary in payment on accounts of said bridge, not to exceed the sum of $10,000.

That said commissioners shall be entitled to three dollars per day for each day actually employed.

Some discussion at that time occurred, and said resolution was immediately, at about the time of the offering of the same, as aforesaid, by a *viva voce* vote of those present, laid upon the table.

The voting by printed ballots, hereinbefore described, began at about the same time, without reference to said written resolution, and continued until about the time appointed for the closing of the polls, as specified in the said notice for said meeting; when all persons desiring to vote by ballot having done so, at about the time of the closing of the polls, and after said voting by ballot had ceased, the resolution, the said copy of which is hereinbefore set out, was

offered and voted for and concurred in with substantial unanimity by *viva voce* vote of those present, in number about twenty-five, and that no ballot was cast by any one upon said resolution. The foregoing constituted the proceedings of said special town meeting.

IX. That, on or about November 21, 1889, at a regular session of the board of supervisors of St. Lawrence county, Samuel H. Palmer, supervisor of the town of Oswegatchie, presented said resolution to said board of supervisors, and the said board of supervisors thereupon proceeded to enact, on said November' twenty-first, an act or bill:

This act authorized the supervisors of the town to borrow $10,000 and to issue town bonds therefor, and appointed five commissioners for said town to construct the bridge hereinbefore provided for.

There was no other application by the town of Oswegatchie, or its officers or any of them, to said board of supervisors, for any act or bill with relation to said Eel Weir bridge than said resolution presented by said Palmer, as aforesaid; and there was no other act, bill or resolution passed by said board of supervisors at said regular session with regard to said Eel Weir bridge.

X. The said Eel Weir bridge, at the time of said town meeting, consisted of and has since that time consisted of an old wooden superstructure, worn out and incapable of economical repair, and of a substructure of stone piers and abutments, which at a comparatively small expense could be readily placed in good condition, and the building of new piers and abutments would be an unexcusable and extravagant expenditure of highway moneys.

XI. That on or about the 29th day of November, 1889, the defendant entered into a written contract with the plaintiff by which the plaintiff, in substance, agreed to furnish and erect for the defendant the superstructure of said Eel Weir bridge to consist of a wrought-iron, parabolic truss bridge, according to the plans and specifications attached to said contract, and as in said contract provided, for the sum of $9,200 to be paid by the defendant, and which defendant agreed to pay, as follows:    *    *    *

XII. On the 18th day of February, 1890, at a special session of the board of supervisors of St. Lawrence county, the said board of supervisors passed the following bill, act or resolution: " An act to repeal an act entitled an act to authorize the town of Oswegatchie

to borrow money for the purpose of building a new bridge across the Eel Weir rapids in said town," etc.    *  *  *

That after the passage of said last bill, act or resolution, hereinbefore set out, and on said February 18th, 1890, said board of supervisors at said special session passed the following act, bill or resolution: "An act to authorize the town of Oswegatchie to borrow money for the purpose of building a new bridge across Eel Weir rapids in the said town on the site of the present bridge, and appointing commissioners to construct the same, pursuant to chapter 482, Laws of 1875, and the several acts supplemental thereto and amendatory thereof." Passed by the board of supervisors of St. Lawrence county on the 18th day of February, 1890, two-thirds of all the members elected thereto voting in favor thereof.

The board of supervisors of St. Lawrence county do enact as follows: (This law was substantially the same as the first law.)

The said three supervisors' bills, acts or resolutions of the board of supervisors of St. Lawrence county are all the acts, bills or resolutions passed by said board with regard to said Eel Weir bridge, and the only application made to said board for the passage of any of said acts, bills or resolutions was the presentation of said resolution by said Palmer to said board, as hereinbefore set out.

XIII. No part of said installment due on said contract has been paid.

XIV. The commissioners, Daniel Magone, William J. Averell, Henry Lovejoy, Fenton Devoy and Alexander Mayne, are acting, and claim the right under said bills of the board of supervisors to contract for the erection of a new bridge and to supervise the erection of the same across said Oswegatchie river at the Eel Weir rapids in behalf of said town of Oswegatchie.

*A. D. Wales*, for the plaintiff.

*George R. Malby*, for the defendant.

LANDON, J. :

The special town meeting for the town of Oswegatchie was called and held, and did vote to raise and appropriate $10,000 to maintain the highway bridge across the Oswegatchie river, at the Eel Weir rapids in the said town, in strict pursuance of section 7, article 1, title 2, chapter 11, part 1 of the Revised Statutes, as amended by chapter 259, Laws of 1886. The amended section provides that

special town meetings "shall also be held whenever twelve or more persons eligible to the office of supervisor of the town shall, by application in writing, signed by them, and addressed to the town clerk, require a special town meeting to be called   \*   \*   \*   to vote on the question of raising and appropriating moneys for the construction and maintenance of any bridge or bridges which such town may be authorized by law to erect or maintain."

Section 8 (1 Revised Statues, m. p. 341), provides for giving the proper notice. The bridge was one which, by law, the town was bound to maintain. It was old and worn out, and had been condemned by the commissioner of highways as unfit for travel, and the superstructure of a new bridge was necessary. The old piers and abutments were still serviceable. One hundred and fifty-two ballots were cast for raising and appropriating the money, and three against the same.

Assuming that no valid action was taken to place the erection of the bridge in the hands of other agents, then we think the sole commissioner of highways of the town was authorized by law to proceed with its erection upon the credit of the appropriation thus authorized, and in reliance upon the subsequent raising by tax of the amount of the appropriation, or so much thereof as should be necessary to meet the expenses of the erection ; such expense to be audited according to law.

The Revised Statutes provide that, "The commissioners of highways in the several towns in this State shall have the care and superintendence of the highways and bridges therein ; and it shall be their duty :

" 1. To give directions for the repairing of the roads and bridges, within their respective towns ;

" 4. To cause the highways and the bridges which are, or may be, erected over streams intersecting highways, to be kept in repair." (1 R. S., m. p. 501, § 1.)

The ordinary highway labor due from inhabitants and taxpayers, and the fines and commutations which may be collected, furnish part of the resources which the commissioners of highways must employ as a means to the performance of these duties. It is obvious that these means must often prove inadequate.

Section 4 provided that $250 additional might be raised by tax

if the commissioners should require it. The commissioners might apply in open town meeting for $250 more (chap. 274, Laws of 1832); also for $750 more (chap. 615, Laws of 1857); both of these extra sums, if voted, to be for the "improvement of roads and bridges." Chapter 103, Laws of 1858, amended by chapter 442, Laws of 1865, authorized the commissioners of highways, by and with the consent of the board of town auditors, to cause roads and bridges destroyed by the elements or otherwise, after the annual town meeting, to be immediately repaired or rebuilt, although the expense might exceed the sum already authorized by law, the same to be audited and raised by tax. Chapter 377, Laws of 1878, amended by chapter 67, Laws of 1879, requires that "all moneys raised and collected upon the taxable property of any of the towns of this State for highway and bridge purposes, shall be paid over by town collectors of taxes to the commissioners of highways of the towns in which the moneys are so raised and collected, and to no other officer or person whatsoever," permitting, however, the boards of supervisors to make the disposition provided for in chapter 855, Laws of 1869, a statute, as it will be seen hereafter, under which the board of supervisors have not acted in this case.

The act of 1878 makes it the duty of the commissioners of highways to expend all such moneys upon the highways and bridges. The appropriation voted at the special town meeting became a town charge. (1 R. S., 358, m. p., § 2.) The commissioners of highways must render an account in writing to the board of town auditors of all the moneys paid out by them, with the vouchers thereof, and also an account of the improvements made upon the roads and bridges. (1 R. S., m. p. 502, § 3, amended by chap. 396, Laws of 1884.)

It will thus be seen that the commissioners of highways are charged with the care, superintendence, repairs and improvements of highways and bridges within their respective towns, and with the custody and disbursement, for the purpose, of whatever money is provided for the same. No other officers are, by State enactment, in like manner charged with respect to bridges within the town. It seems irresistibly to follow that, in the absence of any other valid provision for the erection of this bridge, the commissioner of highways was charged with the power and duty to erect it.

Cases are cited by the commissioner tending to show various

limitations of his power. Of course, he has no power except that conferred by statute, either expressly or by fair implication. And his power is strictly limited within his means. He can only obtain the means permitted by the several statutes. His power, duty and liability are all measured by what he· may do, and ought to do, within the means at his disposal. Given the means he could build this bridge and ought to build it. (*Mather* v. *Crawford*, 36 Barb., 564; *Huggans* v. *Riley*, 21 State Rep., 706; *People* v. *Meach*, 14 Abb. [N. S.] 429.)

He would, therefore, have the power to employ agents or servants to prosecute the work and to procure the necessary materials. This involved the power to make appropriate contracts for the same. (*Boots* v. *Washburn*, 79 N. Y., 207.) His contract with the plaintiff was within his powers, unless the facts next to be noticed took the power from the commissioner and lodged it elsewhere.

At the opening of the special town meeting above mentioned a resolution was offered to the effect that application be made to the board of supervisors of the county of St. Lawrence, at the next session, to authorize the town of Oswegatchie to borrow money to build the bridge, and for the appointment of commissioners to build it. The resolution, after some discussion, was laid upon the table by a *viva voce* vote of the electors present, and the voting by ballot upon the resolution to raise and appropriate money proceeded until about the time appointed for closing the polls, and until such voting by ballot ceased, when the resolution for the aforesaid application to the board of supervisors was again offered and concurred in with substantial unanimity by a *viva voce* vote of those present, about twenty-five in number.

At the next session of the board of supervisors an application was made in pursuance of such resolution, and the board of supervisors, in compliance therewith, on the 21st day of November, 1889, passed a law authorizing the town to borrow $10,000 upon its bonds, and appointing five commissioners to construct the bridge, prescribing details. On the 18th day of February, 1890, the board of supervisors repealed the said law and passed another in place thereof. The second law was, in intent and scope, like the first, and was passed to obviate or cure supposed defects or illegalities in the first. The details of this law need not be given. We assume that in

every respect it is valid and transfers the power to erect the bridge from the commissioner of highways to the commissioners named in the law, provided the board of supervisors had jurisdiction to enact it. Between the passage of the first and second law the plaintiff and defendant entered into a contract, whereby the plaintiff agreed to erect the bridge for the price of $9,200, one-half of which was to be paid upon delivery of the iron joist material of the bridge at the place of its erection. This the plaintiff has done, and if the contract is valid, $4,600 are now due to it.

The supervisors' bill was passed in supposed pursuance of chapter 482, Laws of 1875, and amendatory acts. The title of the bill so recites, and such recital is required by the second section of the act of 1875. The sixth subdivision of section 1, as amended by chapter 451, Laws of 1885, forbids the board of supervisors to pass the law in question, except as follows: " But no authority shall be exercised under this subdivision except upon the application of a town liable to be taxed for such purpose, to be made by vote of a majority of the electors thereof voting at a regular town meeting, or at a special town meeting called for the purpose, or upon the application of the supervisor, by and with the consent of the commissioner of highways, town clerk and justices of the peace of such town."

The special town meeting in this case was not called for the purpose of making any application to the board of supervisors. It was called in pursuance of the section of the Revised Statutes first cited in this opinion. That section does not embrace any provision for such an application. It specifies various other objects and concludes as follows: "And no special town meeting shall have power to act on any subjects other than such as are specified in this section."

As there was no power to make the application at the special town meeting, as no other valid application was made, and as power to the board of supervisors to pass the law depends upon an authorized application, it necessarily follows that the power did not exist.

We are cited to *Town of Kirkwood* v. *Newburgh* (45 Hun, 323). In that case the authority of the special town meeting to pass a somewhat similar resolution was not challenged, and, therefore, was assumed. The meeting probably was held in pursuance of a law or resolution which boards of supervisors are authorized to make by subdivision 19 of section 1 of chapter 482, Laws of 1875, as follows:

"To provide for the calling and holding of special town meetings to consider and decide any question upon which the electors of the town may be called to take action in accordance with the provisions of this act."

The special town meeting in *Bergen* v. *Gubna* (10 Hun, 11) was held under authority conferred by the board of supervisors.

The case of *Barker* v. *Commissioners*, decided by the Special Term, arose under the facts in this case. It was an action by a taxpayer to restrain the commissioners from building the bridge. The learned judge assumed that the board of supervisors had the proper application before them.

It needs no authority for the proposition that when the performance of a condition precedent lies at the foundation of the existence of a power, its non-performance leaves the assumption of the power without foundation.

The learned counsel for the plaintiff argues with force that, assuming the existence of the proper application, boards of supervisors have no power to appoint commissioners in such cases. We incline to the opinion that the weight of authority is the other way. Chapter 482, Laws of 1875, is an enactment in pursuance of the constitutional authority to confer on boards of supervisors "further powers of local legislation and *administration*." The legislature has legislative power, and hence may confer administrative power; and boards of supervisors may, under the Constitution, if conferred, receive both legislative and administrative power. The power conferred upon boards of supervisors is a conferrence of the power appropriate to its execution, except as statutory or constitutional provisions limit or conflict. (Same chapter, § 6.)

The appointment of commissioners to build bridges has long been regarded by the legislature and the courts as an appropriate means to their erection.

Upon the case as submitted, as between the parties to the record, the plaintiff is entitled to judgment for $4,600, and such judgment is ordered against the defendant.

LEARNED, P. J., and MAYHAM, J., concurred.

LEARNED, P. J.:

If the vote of the town meeting authorizing an application to the board of supervisors was not a vote "on the question of raising

and appropriating moneys for the construction and maintenance" of this bridge, then under chapter 259, Laws of 1886, amending section 7, article 1, title 2, chapter 11, part 1, Revised Statutes, the special town meeting could not vote upon it legally.

If it was a vote on the question of raising money or incurring any town liability, then it should have been by ballot. (Chap. 122, Laws of 1883.)

Lᴀɴᴅᴏɴ and Mᴀʏʜᴀᴍ, JJ., concurred.

Judgment ordered for plaintiff on submission.