## BIRGE v. BERLIN IRON BRIDGE CO. et al.

### (Supreme Court, General Term, Third Department. November 30, 1891.)

1. TOWNS—ISSUE OF BONDS—CONSTRUCTION OF BRIDGES—SUFFICIENCY OF VOTE.
     Laws 1875, c. 482, as amended by Laws 1885, c. 451, provides that the board of county supervisors may authorize towns to borrow money for the erection of bridges, but that no authority shall be exercised under the act except on the application of the town, to be made by a vote of the majority of the electors at a regular town-meeting, or at a special town-meeting "called for the purpose." *Held,* that a petition of electors of the town requesting the town-clerk to call a special town-meeting, "pursuant to chapter 259, Laws 1886, * * * for the purpose of raising and appropriating the necessary money to maintain the bridge," the call of the town-clerk in pursuance thereof specifying the same purpose, and stating that "a resolution will be offered at said special town-meeting to raise a sum not exceeding $10,000," and the printed ballots used at such meeting being either "for" or "against" "the resolution to raise $10,000, or so much thereof as may be required to build the * * * bridge," sufficiently showed that the purpose of such meeting was to raise a sum not exceeding $10,000 to maintain the bridge, and that the meeting understood that the resolution was as indicated in the call of the town-clerk.

2. SAME—EVIDENCE.
     At the town-meeting in question, before balloting commenced, a resolution was offered to apply to the board of supervisors for an act authorizing the appointment of commissioners to build the bridge, which was followed by discussion and the remark of a citizen that it was better to ascertain whether the people desired the bridge to be built before commissioners should be appointed, whereupon the citizen moved that the meeting proceed to ballot, and a vote was taken using the printed ballots "for" or "against" "the resolution to raise $10,000," etc. When the balloting was nearly finished, a *viva voce* vote was taken on the resolution which had been objected to. *Held,* that the vote by ballot was upon the resolution specified in the call of the town-clerk, and not upon that to apply for the appointment of commissioners, though the latter was the only written resolution offered at the meeting, and that, an affirmative vote having been cast on the balloting, the board of supervisors were authorized to pass the act in question.

3. BRIDGES—CONSTRUCTION—COMMISSIONER OF HIGHWAYS.
     1 Rev. St. p. 501, § 1, invests the commissioner of highways with the care, superintendence, repair, and improvement of highways and bridges within his town; and Laws 1878, c. 377, as amended by Laws 1879, c. 67, charges him with the custody and disbursement of whatever money is raised by the town for those purposes. *Held* that, where a town-meeting votes to raise and appropriate a sum of money for the erection of a bridge across a river, the commissioner of highways is charged with the duty to erect it, and to make appropriate contracts therefor, in the absence of any action placing the work in the hands of other agents.

4. SAME—PAYMENT OUT OF ORDINARY REVENUES.
     The authority vested in the board of supervisors by Laws 1875, c. 482, to enable a town to borrow money to build a bridge, or to pay a debt it has already incurred in building it, does not conflict with the power vested in the town to provide for building the bridge by its highway commissioner without borrowing, or for paying for the bridge after it is built, in the ordinary way of paying town charges.

     MAYHAM, J., dissenting.

Appeal from special term.

Action by James C. Birge, a tax-payer of the town of Oswegatchie, against the defendant the Berlin Iron Bridge Company, to restrain it from constructing a bridge under a contract made with the defendant Joseph Wagner, as commissioner of highways of that town, alleged to have been made in pursuance of authority given at a special town-meeting of that town. The complaint, among other things, charges that the defendant Wagner claims to have entered into a contract, as commissioner of highways, with the Iron Bridge Company, to tear down the old bridge at Eel Weir rapids, in the town of Oswegatchie, and construct a new bridge in its place, for the sum of $9,200. It also charged that Wagner had no right to enter into such contract, and that it was entered into for the purpose of cheating and defrauding the tax-payers

of the town. It also set out what is claimed by the plaintiff to have been the action of the special town-meeting. Upon the complaints and affidavits of several persons, purporting to set forth what occurred at the special town-meeting, a temporary injunction was granted. The defendants answered separately, and thereafter moved, upon the answers and affidavits at a special term, to vacate the temporary injunction, which motion was denied, and from the order denying the same the defendants appeal. Reversed. For order granting a stay, see 15 N. Y. Supp. 969.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*A. D. Wales*, for Berlin Iron Bridge Company, appellant. *Geo. R. Malby*, for Joseph E. Wagner, appellant. *Daniel Magone*, for respondent.

LANDON, J. The petition of the 18 electors and freeholders of the town, requesting the town-clerk to call the special town-meeting, "pursuant to chapter 259, Laws 1886, * * * for the purpose of raising and appropriating the necessary money to maintain the bridge;" the call of the town-clerk in pursuance thereof, specifying the same purpose, and stating that "a resolution will be offered at said special town-meeting to raise a sum not exceeding $10,000;" the form of the ballots used in voting being either "for" or "against" "the resolution to raise $10,000, or so much thereof as may be required to build the Eel Weir bridge;" the fact that the ballots were printed,—indicate too clearly, I think, to be misunderstood, that the purpose of the meeting was to vote upon the question of appropriating a sum not exceeding $10,000 to maintain the bridge, and that it was understood that the resolution was as indicated in the call of the town-clerk. The plaintiff's affidavit is to the effect that, before balloting commenced, the resolution was offered to apply to the board of supervisors for an act authorizing the borrowing of money to build the bridge, and appointing commissioners to construct it; that some discussion followed, and was closed by the remark of Mr. Wilson that it was better to ascertain whether the people desired the bridge to be built, and to make an appropriation for it, before commissioners should be appointed; Wilson then moved that the meeting proceed to ballot; that thereupon the meeting did proceed to ballot, using the printed ballots, which, of course, had been already prepared. The polls opened at 1 o'clock, and the balloting continued until half past 3, when it was, on motion, suspended, and the resolution respecting the application to the supervisors was amended and adopted by a *viva voce* vote. The plaintiff does not state whether the balloting was resumed. The polls closed at 4 o'clock. Now, on the plaintiff's statement, and its corroboration by the affidavit of his learned counsel, it is apparent that the balloting was upon the resolution indicated both in the town-clerk's notice and in the ballots themselves; and Mr. Wilson's motion obviously referred to it, and was not upon the resolution to apply to the supervisors. If it is true that no other written resolution was offered, except the one to apply to the supervisors, the inference that the balloting must have been upon that resolution, or not upon any, is plainly erroneous. The balloting was nearly, if not wholly, finished before the meeting took the *viva voce* vote on the written resolution, and no other vote was taken upon it. Such being the case, the commissioner of highways was authorized to make the contract with the defendant, as we held in *Bridge Co.* v. *Wagner*, (Sup.) 10 N. Y. Supp. 840. The charge of fraud in making that contract is not supported. The subsequent action of the board of supervisors could not impair the contract, or deprive the defendant of his right to proceed under it. Hence the order denying motion to vacate the injunction should be reversed. The power of the electors at such special town-meeting to make an appropriation of $10,000 is again questioned, notwithstanding our decision above cited, but, as it is alleged that that case was collusively agreed upon in the interest of this defendant, it is proper to re-examine the question. Referring to the opinion in

10 N. Y. Supp. 840, it may be added to what is there said that the $250 to be raised under the Revised Statutes is to be raised upon the commissioner of highways delivering a statement to that effect to the supervisor; the $250 additional provided for by chapter 274, Laws 1832, the commissioner of highways must apply for in open town-meeting; the additional $750, authorized by chapter 615, Laws 1857, he must apply for in like manner. The "open town-meeting" means the annual town-meeting. Special town-meetings, as authorized by 1 Rev. St. marg. p. 341, § 7, before the amendment made by chapter 259, Laws 1886, under which amendment this special town-meeting was expressly called, were not authorized to be held for the purpose of voting upon "the question of raising and appropriating moneys for the construction and maintenance of any bridge or bridges." The methods already existing provided for raising the sums above specified. This amendment contemplated additional moneys to meet emergencies. It would be idle to authorize a special town-meeting to vote upon such a question if the vote was inefficient; and it may be added that such a power harmonizes with our system of local self-government. It is much better that those who vote the debt should pay it than foist it upon posterity by means of a loan to be authorized by the board of supervisors pursuant to chapter 482, Laws 1875, and amendatory acts, especially chapter 451, Laws 1885, under which the bo. d of supervisors in this case assumed to act. If the town do not wish to borrow the money in the first instance, it need not apply to the board of supervisors. It can by its own vote authorize the raising and appropriating of the money. The powers given to the board of supervisors to authorize and provide for the erection of bridges do not take away the powers vested in the commissioner of highways for that purpose. *Huggans* v. *Riley*, 125 N. Y. 88, 25 N. E. Rep. 993. And it is manifest that the authority vested in the board of supervisors to enable the town to borrow money to build a bridge, or to pay the debt it has already incurred in building it, does not conflict with the power vested in the town to provide for building it by its highway commissioner without borrowing, or for paying for it after it has been built, in the ordinary way of paying town charges. I think the subsequent proceedings which resulted in an act of the board of supervisors, the appointment of commissioners, and a contract for the building this bridge by the King Bridge Company were regular, but were taken under a misapprehension as to the validity of the contract with the Berlin Company. I advise, therefore, that the reversal of this order be without prejudice to any remedy the King Company may be advised to pursue respecting damages.

LEARNED, P. J., concurs.

MAYHAM, J., (*dissenting.*) The plaintiff brings this action as a resident and tax-payer of the town of Oswegatchie, and asks that the defendants be restrained from carrying out a contract made by the defendant Wagner, as commissioner of highways of that town, with the defendant the Berlin Iron Bridge Company, for the construction of a bridge across a river in that town at Eel Weir rapids, for the alleged purpose of preventing waste of the town funds. The complaint alleges the making of a contract between the defendants for the construction of a bridge at that point at an expense of $9,200, which the defendant Wagner, as such commissioner, had no power to make, which was entered into by the defendants with the intent and purpose of cheating and defrauding the tax-payers of that town. The complaint also purports to allege the proceedings at a special town-meeting, at which it was resolved that an application should be made to the board of supervisors of St. Lawrence county to pass a bill authorizing the town to borrow money on its credit to an amount not exceeding $10,000, to build a bridge at that point, and requesting the appointment of commissioners to build said bridge, and

that subsequently, and pursuant to said application, the board of supervisors passed such act. Upon the complaint, and the affidavits offered to establish the facts therein alleged, a justice of this court granted a temporary injunction, restraining the defendants, during the pendency of this action, from the construction of such a bridge. The defendants answered separately, and upon their answers, and upon counter-affidavits, moved at special term to set aside the temporary injunction, which motion was denied.

There is considerable conflict of facts between the affidavits of the respective parties, as to the proceedings at the special town-meeting; but the facts which led up to the convening of that special town-meeting seem not in dispute. A petition of 18 freeholders, and persons eligible to the office of supervisor of the town, was filed with the town-clerk, requesting that officer "to call a special town-meeting for the purpose of raising and appropriating the necessary money to maintain the bridge across the Oswegatchie river at the Eel Weir rapids, said bridge being one of the bridges said town has to maintain." Pursuant to such request, the town-clerk published a notice, of which the following is a copy:

"*To the Electors of the Town of Oswegatchie, St. Lawrence County, N. Y.:* A petition signed by more than twelve electors of the town of Oswegatchie, eligible to the office of supervisor of said town, requesting the town-clerk of said town to call a special meeting of the electors of the town for the purpose of raising and appropriating the necessary money to maintain the bridge across the Oswegatchie river at the Eel Weir rapids, in said town, being one of the bridges that said town has to maintain. Now, therefore, I, Nathaniel Wells, as town-clerk of the town of Oswegatchie, by virtue of the statutes of the state of New York in such cases made and provided, do hereby call the special town-meeting of the electors of the town of Oswegatchie, aforesaid, for the purpose of raising and appropriating the necessary money to maintain the bridge across the Oswegatchie river at the Eel Weir rapids, in said town. The resolution will be offered at said special town-meeting to raise a sum not exceeding the sum of $10,000. For that purpose said special town meeting will be held in the town-hall, in the city of Ogdensburgh, on Saturday, November 2, 1889. The polls will be open at 1 o'clock P. M., and closed at 4 o'clock P. M.

"*Dated Oct. 25th,* 1889.                    NATHANIEL WELLS,
                              "Town-Clerk of the Town of Oswegatchie."

After the convening and organization of the special town-meeting pursuant to the notice, a resolution was presented as follows: "Resolved, that we hereby request the supervisor of the town of Oswegatchie, and the several ward supervisors of the city of Ogdensburgh, to secure the passage of an act at the next session of the board of supervisors of St. Lawrence county, authorizing the town to borrow money to build a bridge across the Oswegatchie river at the Eel Weir rapids, on the site of the present bridge, and appointing William J. Averill, of Ogdensburgh, Fenton Devoy, and James Anderson, of Oswegatchie, commissioners to construct such bridge, in such form and manner as they shall deem for the best interest of the town; and that the order of such commissioners on the supervisor of the town shall be his warrant for disbursements to be made from time to time, as may be necessary in payment on account of said bridge, not to exceed the sum of ten thousand dollars; that said commissioners shall be entitled to three dollars per day for each day actually employed."

This resolution was discussed by persons attending said meeting, and there is a sharp conflict in the evidence offered on the motion whether the balloting was upon this resolution or upon a ballot to raise $10,000. The form of the ballot used is as follows: "*For the Resolution.* For the resolution to raise $10,000, or so much thereof as may be required, to build the Eel Weir rapids bridge." "*Against the Resolution.* Against the resolution to raise the sum

$10,000, or so much thereof as may be required, to rebuild the Eel Weir rapids bridge." While the balloting was in progress, a motion was made to amend the resolution above quoted, and balloting was suspended, and the resolution was amended by a *viva voce* vote in respect to the number and personality of the commissioners. The town-clerk certifies the result of the special town-meeting as follows: "The ballots for raising the sum of $10,000 were counted, and there were 152 for the raising of $10,000, and three against." At the annual meeting of the board of supervisors next ensuing the holding of this special town-meeting, that board, on the 21st day of November, 1889, passed an act, in the first section of which it recites that, in accordance with a resolution adopted at a special town-meeting at the town of Oswegatchie, the supervisor of that town was authorized to borrow on the credit of that town a sum not exceeding $10,000, at a rate of interest not exceeding 4 per cent., and execute the bonds of the town therefor, and provided for the time of the maturity of such bonds, and for levying and collecting from the taxable property of that town the sums of money required to pay such bond at maturity. The second section of the act provides for the form and the manner of executing such bonds, and directs the supervisor to sell at not less than par value, and pay over from the money received therefor to the commissioners appointed by that act so much as shall be necessary upon their order in payment for the construction of a bridge across the Eel Weir rapids, in that town. The next section appoints commissioners for the town to construct such bridge, and prescribes their powers and duties, and fixes their compensation. The fourth section provides that the act shall take effect immediately. On the 18th of February, 1890, after the passage of this act, the board of supervisors of St. Lawrence county passed an act repealing the act of November 21, 1889; and on that same day that board passed a bill for the erection of such bridge, appointing commissioners and authorizing the issuing of bonds by the supervisor, and the sale of the same to meet the expenses of such construction, in substance like the act of November 21, 1889, but differing therefrom in some particulars. On the 29th of November, 1889, the defendant Wagner, as commissioner of highways, made the contract with the bridge company, the performance of which is sought to be restrained in this action.

Some of the questions raised on this appeal have been before this court on an agreed case, submitted to this court under section 1279 of the Code, by *Bridge Co.* v. *Wagner*, (Sup.) 10 N. Y. Supp. 840, for the avowed purpose of determining, as between them, the effect of the contract; and, as far as the question was fairly before this court, that submission and determination by it must be conclusive on this motion. It is, however, proper to state that the facts stated in that submission differ widely from those presented on the motion in many important particulars.

The sixth article of that submission admits and declares that the special town-meeting was called and held under the provisions of the Revised Statutes as amended by chapter 259 of the Laws of 1886. In the case above referred to, this court, upon the facts before it, held that the special town meeting was not called for the purpose of making an application to the board of supervisors, and, as chapter 259 of the Laws of 1886 prohibits a special town-meeting from acting upon any subject other than such as are specified in it, that town-meeting was not authorized to pass a resolution for a submission to the board of supervisors. This result followed as a necessary consequence of the sixth article of the submission, which was, as we have seen, conceded, and agreed that the special town-meeting was under the provisions of the Revised Statutes, as amended by chapter 259 of the Laws of 1886, as the court was not at liberty to look beyond the agreed case for facts upon which to place its decisions. But I do not think that the decision of this court upon the submitted case above referred to is an authority that the commissioner of

highways, upon the vote of the town at a general or special meeting, can impose burdens upon a town to an unlimited extent for the improvement of roads and bridges. The provisions of the Revised Statutes direct the application by the commissioners of highways of the fines, penalties, and commutations to the improvement of roads and bridges, and he may expend in addition thereto in any one year the sum of $250, without an application to the voters of the town. He may also apply in open town-meeting for $250 more, (chapter 274, Laws 1832;) and under the provisions of chapter 615, Laws 1857, he may have $750 more; and these sums, amounting in the aggregate to the sum of $1,250, would seem to be the extent of the power of the town in its original capacity to raise money by a vote. Under our representative theory of government, no power of legislation inheres in the people, and laws can only be enacted by the legislative department of the government, unless the legislature has by express enactment conferred legislative power upon the people, or some representative body of the people. Unless, therefore, power is given by law, either in express terms or by fair implication, to the town to raise more than $1,250, or to the commissioner to obligate the town for a greater amount, any attempt to do so, either by the town or the commissioners, would be ineffectual and void. But we do not think this appeal the proper place to determine the ultimate rights of the parties to this controversy. It is apparent that grave and important questions are involved in the action, which should be tried deliberately upon the proof, and determined by the trial court. This contract in this action is challenged both on the ground of want of power in the commissioner and for alleged fraud in its creation, both of which are proper subjects of investigation upon the trial. The learned judge at the special term, on this motion, held "that there was no voting to raise or appropriate money for the construction of the bridge, except by the passage of the resolution as offered by Mr. Magone as amended by the *viva voce* vote." From our examination of the case we are not prepared to dissent from that conclusion. If that conclusion of the special term is correct, it would seem to follow that the only act done at the special town-meeting was to adopt a resolution which this court has held was at least in part unauthorized and inoperative. *Bridge Co.* v. *Wagner, supra.* Assuming that to be so, it is a matter of grave doubt whether the illegal act so coupled with the part claimed to be valid would not vitiate the whole resolution. In *People* v. *Hall,* 104 N. Y. 176, 10 N. E. Rep. 135, the court, in discussing that principle, said: "But where an agent or the donee of a power does a different thing from what he is authorized to do, and what he does is intended as an exercise of one of the several powers, and he does the act for one purpose, and in the assumed exercise of one specific power, it would seem to be contrary to reason to treat the act as done under a different power, and make it binding, contrary to the intent." Applying that rule to this case, if it should be finally found that the conclusion of the special term was right, and that the vote on the Magone resolution was the only one taken, then, if that was void so far as it authorized a submission to the supervisor, it would in like manner be void as to the $10,000. We are not called upon on this motion to determine the validity of the action of the board of supervisors in appointing commissioners, or of the act of such commissioners, as the contract in this case must stand or fall upon its merits. As serious injury might result to all parties if this injunction were vacated, and it should be finally held that the contract between the defendants was invalid, and as the granting of a temporary injunction is largely in the discretion of the judge of special term granting the same, and as there are grave questions as to the validity of this contract, we think the order of the special term should be affirmed.