## BARKER *v.* TOWN OF OSWEGATCHIE *et al.*

*(Supreme Court, General Term, Third Department.*    November 30, 1891.)

1. ERECTION OF BRIDGES—POWER OF TOWN TO BORROW MONEY.
     A county board of supervisors passed a resolution May 15, 1891, authorizing the supervisors of a town therein to borrow a sum not exceeding $10,000 on the credit of the town for the purpose of building a bridge in pursuance of an application of the supervisor of the town, with the consent of the commissioner of highways, town-clerk, and justices of the peace of the town.    *Held* valid, under Const. art. 3, § 18, as amended, providing that the legislature may confer on the county board of supervisors powers of local legislation, and under Laws 1875, c. 482, § 1, passed in pursuance thereof, authorizing the board of supervisors of any town liable for the erection of a bridge to borrow money for that purpose on application and consent of the town authorities.

2. SAME—VALIDITY OF APPLICATION—NON-CONSENT OF JUSTICE.
     The statute does not, in such case, in terms require the consent of all the justices of the peace of the town, and the absence of the name of one of the four justices from the application and consent will not render the same invalid.

3. SAME—PRELIMINARY INJUNCTION—FRAUDULENT CONSPIRACY—EVIDENCE.
     Plaintiff, in such action, charged that the whole proceedings for building the bridge were a conspiracy to divert the public money to the private purpose of draining certain swamp lands, but the charge was denied by the answer, and controverting affidavits filed by defendants.    *Held* insufficient to uphold a preliminary injunction.

4. SAME—EVIDENCE—FINDINGS IN ANOTHER CASE.
     In such case, the finding of the court in another action that no such conspiracy existed, though not conclusive on plaintiff, was properly taken into consideration by the court as bearing on the question whether the order dissolving the temporary injunction herein should be reversed.

5. SAME—PRIOR VALID CONTRACT FOR BUILDING SAME BRIDGE.
     Plaintiff further urged that a valid contract for building the bridge had already been entered into by the commissioner of highways, and that the subsequent contract should, on that account, be declared invalid.    *Held* insufficient ground for the injunction, the validity of the action of the board of supervisors, and not the validity of the contracts, being in question.

     LANDON, J., dissenting.

Appeal from special term, St. Lawrence county.

Action in the name of Matthew Barker, a tax-payer of the town of Oswegatchie, in St. Lawrence county, to restrain the town, its supervisor, and board of town auditors and commissioner of highways, also the board of supervisors of St. Lawrence county, and certain commissioners appointed by such board, from further action under a bill of resolution of the board of su-

pervisors of St. Lawrence county, passed May 15, 1891, and from taking any action or proceeding in disregard of the contract of the Berlin Iron Bridge Company with Joseph E. Wagner, sole commissioner of highways of the town of Oswegatchie, for the construction of a bridge at Eel Weir rapids in such town. On the complaint and affidavits a temporary injunction was obtained *ex parte* before a judge, which was vacated on a motion on notice founded on the answer and affidavits, in behalf of the defendants, at special term, and from the order of the special term plaintiff appeals. For former reports, see 10 N. Y. Supp. 884, and 11 N. Y. Supp. 942.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*A. D. Wales,* for appellant.  *Daniel Magone,* for respondents.

MAYHAM, J. The injunction order vacated at the special term, and from the order vacating which this appeal is brought, first enjoined the defendants from acting under the bill passed by the supervisors of St. Lawrence county on the 15th day of May, 1891, in relation to the construction of the Eel Weir Rapids bridge, and also enjoined any interference with the contract made for the construction of such bridge between the Berlin Iron Bridge Company and Wagner as commissioner of highways. The principal grounds indicated in the plaintiff's complaint and affidavits used in support of the injunction in this action are: *First.* That the act of the board of supervisors in relation to the construction, passed May 15, 1891, was illegal, unauthorized, and void, and furnished no valid authority to the town or the commissioners appointed in such act to construct such bridge, or incur any expense in relation thereto. *Second.* That the bill or act of said board of supervisors is invalid, on the ground that it is a part of an illegal conspiracy to drain Black lake by dredging out the Oswegatchie river at Eel Weir rapids with the money appropriated for the construction of the bridge. The contract the performance of which is sought to be restrained, and which was enjoined by the temporary injunction, was entered into under the provisions of the act of the board of supervisors passed May 15, 1891, which purports to have been enacted pursuant to an application of the supervisors of the town of Oswegatchie, with the consent of the commissioner of highways, the town-clerk, and three of the justices of the peace of that town. The applications of such town officers are set out in the complaint, as follows:

"*To the Board of Supervisors of the County of St. Lawrence and State of New York:* I, George W. Hurlbut, supervisor of the town of Oswegatchie, by and with the consent of Alexander Mayne, sole commissioner of highways of said town, and of Nathaniel Wells, town-clerk of said town, and the consents of several justices of the peace of the town of Oswegatchie, which consents are hereto attached and made a part of this application, hereby applies to your Hon. Board for authority to borrow upon the credit of the town a sum not to exceed $10,000, at a rate of interest not exceeding 4 per cent. per annum, and for authority to execute and issue the bonds of said town therefor, for the purpose of rebuilding the bridge across the Oswegatchie river at the Eel Weir rapids in said town, and also for the appointment of five commissioners for said town to construct said bridge.

"*Dated May 2d,* 1891.          G. W. HURLBUT."

"We, Alexander Mayne, sole commissioner of highways of the town of Oswegatchie, and Nathaniel Wells, town-clerk of said town, and the several justices of the peace of Oswegatchie, do hereby consent to the foregoing application, and most respectfully request your Hon. Board to grant the same.

"A. MAYNE, Sole Commissioner of Highways.
"N. WELLS, Town-Clerk.
"DAN. S. GIFFIN,
"JAMES A. MACK,
"ABEL COLMAN,
"Justices of the Peace."

"*To the Board of Supervisors of the County of St. Lawrence and State of New York:* I, G. W. Hurlbut, supervisor of the town of Oswegatchie, by and with the consent of Alexander Mayne, sole commissioner of highways of said town, and of Nathaniel Wells, town-clerk of said town, and the consents of the several justices of the peace of the town of Oswegatchie, which consents are hereto attached and made a part of this application, hereby apply to your Hon. Board for authority to borrow upon the credit of the town a sum not to exceed $10,000, at a rate of interest not exceeding four per cent. per annum, and for authority to execute and issue the bonds of said town therefor, for the purpose of rebuilding the bridge across the Oswegatchie river at Eel Weir rapids in said town, and also for the appointment of five commissioners for said town, to construct said bridge.

"*Dated May 2d,* 1891.                    G. W. HURLBUT, Supervisor."

"I, George E. Morris, one of the justices of the peace of the town of Oswegatchie, N. Y., hereby consent to the foregoing and annexed application.

"GEORGE E. MORRIS, Justice of the Peace."

The first section of the act of the board of supervisors authorized the supervisors of the town of Oswegatchie to borrow on the credit of the town a sum not exceeding $10,000, and to execute bonds of the town therefor, and prescribes the denominations, times of payment, and rate of interest of such bonds, and directs the levying and collection of the amounts of principal and interest, at the dates at which such bonds mature, from the taxable property of the town. The second section prescribes the form of such bonds and the manner of their execution, directs their sale at not less than par value, and the application of so much as shall be necessary for the construction of a bridge across the Eel Weir rapids. The third section requires the supervisor of the town of Oswegatchie to execute bonds in the sum of $20,000, with sureties specified therein, to be approved by the board of town auditors, for the faithful performance of his duties under this act. The fourth section of the act appoints five commissioners by name from the town to construct such bridge, and defines and prescribes their powers and duties. The fifth section provides that the act shall take effect immediately. On the 20th of May, 1891, the commissioners appointed under this act met, and by resolution appointed William J. Averill, one of their number, chairman, and Daniel Magone, another member of the commission, secretary, and at the same meeting, by resolution, directed their secretary to ascertain in what time and upon what terms such bridge could be constructed, and to open correspondence with builders for that purpose. On the 22d of May, 1891, at an adjourned meeting of such commissioners, the King Iron Bridge Manufacturing Company submitted a proposition to such commissioners, in writing, to construct such new bridge for $5,670, which proposition was at a meeting of such commissioners accepted by them, by resolution, on the 26th day of May, 1891; and the supervisor of the town was by a resolution of such commissioners directed to sign a contract with the King Iron Bridge Company for the construction of the bridge; and a resolution was also passed directing the chairman to draw his order on the supervisor, payable to the King Iron Bridge Company, for $2,835, pursuant to the contract. The affidavits disclose that pursuant to this contract the King Iron Bridge Company had commenced work under this contract at the time the temporary injunction was granted and served. Prior to the adoption of the amendment of article 3 of the state constitution, the power to pledge the credit of a town beyond a prescribed small limit was vested in the legislature. By the amendment of that article the legislature was authorized by general laws to confer upon the board of supervisors of the several counties such further powers of local legislature and administration as the legislature may from time to time deem expedient, and the same amendment of the constitution divested the legislature of the power of passing private or local bills. *People* v. *Board,* (N. Y. App.) 20 N. E. Rep. 549.

Under that authority the legislature passed chapter 482 of the Laws of 1875. By subdivision 29 of section 1 of that act towns were authorized to issue bonds and borrow money for any purpose mentioned in subdivisions 6, 7, 20, and 23 of that act, upon the authority of an act of the board of supervisors. Subdivision 6 of that act empowered the board of supervisors, upon a vote of the majority of the electors voting at a town-meeting, to authorize a town to borrow money for the erection, repair, and maintenance in whole or in part of any bridge for the erection of which such town is liable; or upon the application of the supervisor, by and with the consent of the commissioner of highways, town-clerk, and justices of the peace of such town. Under this statutory power we do not see why the supervisors might not lawfully do what they did in this case. They may act upon a question of this character, either when the town, by a vote of the majority of the voters at a general or special town-meeting, direct it, or when the supervisor of a town, with the consent of the other town officers mentioned in the act of 1875, above referred to, applies for that purpose. This power was transferred to them by the provisions of subdivision 6 of section 1 of that act, under the provisions of section 23 of article 3 of the constitution, as amended by the vote of the people in 1874, if there was any doubt of its existence before that amendment; but in the case of *People* v. *Meach*, 14 Abb. Pr. (N. S.) 429, decided at special term in 1870, it was held that that power existed under the provisions of section 2 of chapter 855, Laws 1869, and that in a proper case the board of supervisors might appoint commissioners to erect a bridge, and in that case dissolved a temporary injunction restraining the acts of the commissioners; and in *Town of Kirkwood* v. *Newbury*, 45 Hun, 323, the court held that the board of supervisors, on the application of a town under the provisions of subdivision 6, § 1, c. 482, Laws 1875, as amended by chapter 257, Laws 1876, and chapter 451, Laws 1885, might legally enact a law requiring two towns legally liable to maintain a bridge to each raise money to pay its share of the expense by an issue of bonds by each.

In *Bridge Co.* v. *Wagner*, 10 N. Y. Supp. 840, it was held that the special town-meeting was called under the provisions of the Revised Statutes, as amended by chapter 259, Laws 1886, and that the town-meeting, under the call, could not vote upon it legally, or, if it should be held that it was a vote on the question of raising money or incurring any town liability, it should have been by ballot, and in either case it furnished no legal basis for the action of the supervisors. In that case there was no application to the board of supervisors by the supervisor with the consent of the commissioner of highways and other officers of the town, as required by statute. Here all the provisions of the statute authorizing a supervisor to apply seem to have been complied with, unless the absence of one of the four justices of the peace of that town renders the application defective, which we cannot hold for the purpose of reversing this order. The statute does not in terms require the consent of all of the justices of the town. The language is, "the justices of the peace of said town." We are therefore inclined to the opinion that the act of the board of supervisors is in no respect so defective technically as to render it invalid. Whether Morris or Felter is legally entitled to the office of justice of the peace, it seems that Morris is such justice *de facto*, and that Felter, although he believes himself to have been duly elected, has not received any certificate, and has taken no proceedings to enforce his claim to the office. We see no reason, therefore, to doubt the validity of the contract made by the supervisor under the direction of the commissioners appointed under the act of May 15, 1891, unless the whole proceedings are void for the alleged conspiracy to divert the public money directed to be raised by that bill to the private purpose of draining swamp lands by the reduction of the water in Black lake. This purpose is expressly charged in the complaint, and substantially supported by the affidavits used before the judge who granted the preliminary injunction; but it is

as expressly denied by the answer, verified by all of the defendants, or nearly all of them, separately, and it is also denied by the affidavits used on the motion at the special term to dissolve the preliminary injunction.    The defendants also call attention to the seventeenth finding of fact by Justice TAPPAN in the case designated as the "*Second Barker Case,*" in which he finds that "neither of the defendants has conspired with any of their co-defendants or any other person to defraud the town of Oswegatchie of any money, and that each and every of the allegations in the complaint in that regard are unproved." While this finding may not in any way conclude the parties in this action, we think it may be taken into account by this court as bearing upon the question whether the order appealed from in this case, dissolving the temporary injunction therein, should be reversed.    As the whole equity of the plaintiff's bill of complaint is denied by the answer and met by controverting affidavits on this subject, we see no reason for reversing this order on this branch of the case.    But it is urged that all of the acts of the defendants in procuring the passage of the act of May 15th and all acts done under it were in violation of a judgment or order of this court made in what is termed the "*Second Barker Case.*"    That injunction was granted April 4, 1890, and restrained the defendants in that action from issuing bonds under and in pursuance of an act, resolution, or bill passed on or about February 18, 1890, by the board of supervisors of St. Lawrence county in relation to the building of a bridge across the Oswegatchie river at Eel Weir rapids in said town of Oswegatchie, and the defendants are severally therein enjoined from doing anything "under or in pursuance of that act, bill, or resolution of the board of supervisors of St. Lawrence county."    I do not understand that it is alleged in the complaint in this action or claimed from the proof that the defendants in this action are proceeding under the act of February 18, 1890, but their proceedings as town officers, as a board of supervisors, as commissioners appointed by the board of supervisors, and as contracting parties, appear, so far as their acts are sought to be restrained in this action, to start with the application of the supervisor of the town for an act of the board of supervisors, which application is dated May 2, 1891, and appears to have no relation to the act of the supervisors of February 18, 1890, which has been declared by the decision of this court in *Bridge Co.* v. *Wagner, supra,* to have been invalid.    But it is urged that the commissioner of highways had made a valid contract with the Berlin Iron Bridge Company for the construction of a bridge at Eel Weir rapids, and that contract should be upheld, and the contract under the act of the board of supervisors passed May 15, 1891, should therefore be held invalid.    We are not called upon on this motion to pass upon the ultimate validity of these contracts.    It is not, perhaps, impossible that two valid contracts may have been made, by which the other contracting parties, the town, or some of its officers, may be bound; but we are not called upon to determine that question here.    We are really only concerned with the question whether the order appealed from should upon legal ground be reversed, and upon the whole we see no ground for its reversal.    Order affirmed, with costs and printing disbursements.

LEARNED, P. J., concurs.

LANDON, J., (*dissenting.*)    The contract made by Wagner, commissioner of highways, with the Berlin Iron Bridge Company being valid, practically exhausts the subject, though it may be possible for the board of supervisors to provide for making a second and wholly unnecessary contract with the King Iron Bridge Company for the same work, as to which I have grave doubts.    Be that as it may, the court should do what it can to put a stop to double expenditure for the work.    I therefore advise upholding this injunction, without prejudice to the plaintiff's remedy for damages for breach of the contract with him.